UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | DOCKET NO. 20-cr-0177(1) |
| VERSUS | : | JUDGE JAMES D. CAIN, JR. |
| GRANTHAM MITCHELL | : | MAGISTRATE JUDGE KAY |

REPORT AND RECOMMENDATION

Before the court is a Motion to Suppress filed by defendant Grantham Mitchell. Doc. 23. The matter was referred to the undersigned for Report and Recommendation by 28 U.S.C. § 636(b)(1)(A) and (B) and our local rules of court. Through this motion defendant seeks to suppress use of any statements made by him on May 11, 2019, as, according to defendant, those statements were made in violation of the protections afforded to him by the Fifth Amendment to the United States Constitution. The government opposed the motion [Doc. 27] and the matter was heard by and evidence was introduced before the undersigned.

After consideration of the evidence adduced and the applicable law and for reasons stated below, we **RECOMMEND** that the motion be **DENIED.**

I.
BACKGROUND

Defendant has been charged with one count of Possession of Child Pornography, a violation of 18 U.S.C. § 2252A(a)(5)(B), for which the government seeks a sentencing enhancement as defendant was previously convicted in 2014 for Sexual Exploitation of a Child and Possession of

Child Pornography under 18 U.S.C. 2252A(b)(2)[1], and also for Possession of Contraband in Prison in violation of 18 U.S.C. §1791 (a)(2) and (b)(4). Doc. 1. At the time of the incident which led to these charges, defendant was housed at the Federal Correctional Institute at Oakdale, Louisiana (FCI-O).

At the hearing on the motion defendant adduced the testimony of two witnesses, Officer Lamar Lee Moreau, Jr., and Lieutenant Joshua Clay Jett, both employees of the Bureau of Prisons and both assigned to FCI-O on the day in question. Officer Moreau testified that on May 11, 2019, he was performing routine, random[2] cell searches which included a search of bunk 216, a bunk occupied by the defendant, and there he found a cellular telephone with chargers.

At the time of the search the officer had cleared the cell, but he stated several inmates were milling around the open area just outside of the cell at the time of the find. Officer Moreau asked the group who belonged to that bunk and defendant admitted the bunk and the cellular telephone were his[3] at which time Officer Moreau contacted Lieutenant Jett for further proceedings. Officer Moreau stated that his involvement in the situation ended once he notified Lieutenant Jett and that he has no authority to conduct criminal investigations. He stated that defendant was not handcuffed at any point and neither was defendant forced or coerced to give a statement. Defendant was not, however, free to leave the area. Officer Moreau wrote an incident report that was transferred to Lieutenant Jett with the contraband. Officer Moreau stated that this was the first instance where contraband he found in a random search led to the filing of criminal charges and that he had never testified in federal court.

---

[1] In its Response in Opposition to defendant's motion, the government explains that defendant was convicted of Sexual Exploitation of a Child and Possession of Child Pornography in the U.S. District Court for the Southern District of Mississippi and sentenced to fifteen (15) years on the exploitation charge and seven (7) years on the possession charge, sentences to run concurrently. Doc. 27, pp. 1-2.
[2] The officer testified that they performed five random searches per shift per day.
[3] Defendant also admitted he knew how to unlock the telephone but refused to do so, claiming he would delete things off of the telephone if he did so.

Lieutenant Jett testified that he oversees the orderly running of operations at FCI-O and that he followed the normal protocol followed by the institution when contraband is found. Lieutenant Jett stated that he was contacted by Officer Moreau and proceeded to defendant's cell block. He escorted defendant back to his (the Lieutenant's) office for purposes of giving a statement. Defendant at that point was not free to roam; he was obligated to go with Lieutenant Jett, but he did go voluntarily. Defendant was not given any *Miranda* warnings because, according to Lieutenant Jett, there were no criminal charges pending at that point.

Lieutenant Jett testified that he also has no authority to conduct criminal investigations and had never testified in a federal court for issues involving contraband. Lieutenant Jett prepared an affidavit for defendant's signature in which he, defendant, acknowledged his cell assignment, that the cellular telephone found belonged to him, that his cellmates had no knowledge of the item, and that he told the Lieutenant that the cellular telephone belonged to him and not to any of his cellmates. Doc. 31, att. 3. The preamble to the affidavit states that defendant made the "statement freely and without any promises or assurances." *Id.* Lieutenant Jett stated that defendant initialed the affidavit and was not forced or coerced into signing—defendant was free to not to sign if he so chose. The witness explained that the purpose of obtaining a statement such as this was administrative as persons suspected of possession of contraband in the prison must be segregated to the Special Housing Unit (SHU) pending investigation. An affidavit such as this would (hopefully) limit the number of inmates that must be moved to SHU pending an investigation. Defendant was not handcuffed until he entered SHU but that is an institutional requirement as SHU is a "restricted movement unit" where all inmates are handcuffed prior to entering. Lieutenant's total interaction with defendant lasted fifteen to twenty minutes and thereafter he transferred the information to Special Investigation Services for further processing.

Defendant argues in his motion that his admission that the cellular telephone was his should be suppressed insofar as he should not have been questioned before being given his *Miranda* rights. Doc. 23, generally. In response, the government argues that the questioning of this defendant was not a "custodial interrogation" of the type that would require he be advised of his rights before being asked the questions posed to him. Doc. 27, generally.

## II.
### LAW AND ANALYSIS

The Fifth Amendment guarantees that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. Both parties note, as they well should, that the United States Supreme Court in *Miranda v. Arizona* extended the Fifth Amendment privilege against compulsory self-incrimination to individuals subjected to custodial interrogation by the police. 86 S. Ct. 1602, 1620-21 (1966). *Miranda* held that statements made in custodial interrogation are inadmissible unless the suspect is specifically informed of his rights and freely decides to forgo those rights. *Id.* at 1630. "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 1612 (clarifying its earlier pronouncement in *Escobedo v. State of Illinois*, 84 S. Ct. 1758 (1964), of what type of questioning the Court meant to address when it "spoke of an investigation which had focused on an accused." *Id.*, n.4). A person is "in custodial interrogation" for purposes of *Miranda* "when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *United States v. Bengivenga,* 845 F.2d 593, 596 (5th Cir.1988) (en banc).

As defendant suggests in argument, the Supreme Court in *Mathis v. United States*, 88 S. Ct. 1503 (1968), has applied these safeguards to inmates in a prison setting. In that case an agent

of the Internal Revenue Services interrogated a state prisoner about potential tax code violations for which he was subsequently convicted. The Supreme Court ultimately ruled that those statements were not admissible under *Miranda*, despite the claims of the government that they were elicited as the results of a "routine tax investigation where no criminal proceedings might even be brought" and when defendant was imprisoned at the time for "an entirely separate offense." *Id.* at 1504.

As noted by the government in opposition, however, incarceration in and of itself does not trigger *Miranda* rights and so held the Supreme Court in *Howes v. Fields*, 132 S. Ct. 1181 (2012). The prisoner in *Howes* was in state custody but was interrogated by Sheriff's deputies, not a corrections officer, about a separate crime in which he was allegedly involved that occurred before his current imprisonment. The interrogation lasted between five and seven hours and the prisoner eventually confessed to the other crime without ever having received his *Miranda* warnings. *Id.* at 1186.

The Supreme Court granted writs to consider the correctness of the Sixth Circuit's adherence to a categorial rule that "questioning of a prisoner is always custodial when the prisoner is removed from the general prison population and questioned about events that occurred outside the prison[,]" which stemmed from the Sixth Circuit's reliance on *Mathis v. United States*, 88 S.Ct. 1503 (1968). *Id.* at 1187. The Court rejected the proposal that it ever adopted such a "categorical rule" (*id.*) and specifically rejected the elements enunciated by the Sixth Circuit that (1) imprisonment, (2) questioning in private, and (3) questioning about events in the outside world would automatically create a custodial situation for *Miranda* purposes. *Id.* at 1189.

In so concluding the Court noted that "standard conditions of confinement and associated restrictions on freedom will not necessarily implicate the same interests that the Court sought to

protect when it afforded special safeguards to persons subjected to custodial interrogation."[4]  *Id.* at 1191.  The court further distinguishes a prison setting for *Miranda* purposes by noting that "a prisoner, unlike a person who has not been sentenced to a term of incarceration, is unlikely to be lured into speaking by a longing for prompt release."  *Id.*  And, finally, the Court notes that "a prisoner, unlike a person who has not been convicted and sentenced, knows that the law enforcement officers who question him probably lack the authority to affect the duration of his sentence."  *Id.*

So the Court rejected the conclusion of the Sixth Circuit that imprisonment, *ipso facto*, requires that any questioning at all be proceeded by *Miranda* warnings and further concluded that *Miranda* is required "only in those types of situations in which the concerns that powered the decision are implicated."  *Id.* at 1192 (quoting *Berkemer v. McCarty*, 104 S.Ct. 3138, 3148-49 (1984)).  When a prisoner is questioned, "the determination of custody should focus on all of the features of the interrogation."  *Id.*

Applying that analysis to the facts here we conclude that defendant was in no manner "in custody" for *Miranda* purposes when he admitted to the searched cell and the contraband being his own.  From Officer Moreau's testimony we know that at the time of the initial admission the cell area had been cleared and the question posed about occupancy of the bunk and ownership of the contraband was directed to no one in particular but rather to the group at large.  As the Supreme Court just pronounced in *Howes*:

> As used in our *Miranda* case law, "custody" is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion. In determining whether a person is in custody in this sense, the initial step is to ascertain whether, in light of "the objective circumstances of the interrogation," *Stansbury v. California,* 511 U.S. 318, 322–323, 325, 114

---

[4] The "special conditions" to which the court refers is "shock" that often accompanies arrest that cuts off the individual's "normal life and companions," abruptly transporting the individual to a "police-dominated atmosphere" not shared by a person already in prison, who has already been convicted of a crime, and is in expected and familiar environs.

> S.Ct. 1526, 128 L.Ed.2d 293 (1994) *(per curiam),* a "reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane,* 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). And in order to determine how a suspect would have "gauge[d]" his "freedom of movement," courts must examine "all of the circumstances surrounding the interrogation." *Stansbury, supra,* at 322, 325, 114 S.Ct. 1526 (internal quotation marks omitted).

132 S.Ct. at 1189. In that initial phase of Officer Moreau's search, defendant was in no custody at all that entitled him to a *Miranda* warning. He was in prison, granted, but with no more restraint on movement or entitlement to stay quiet than any other prisoner. Even once taken to the office of Lieutenant Jett we find no *Miranda* warning necessary. The *Howes* court further states:

> Taking a prisoner aside for questioning—as opposed to questioning the prisoner in the presence of fellow inmates—does not necessarily convert a "noncustodial situation . . . to one in which *Miranda* applies. *Mathiason,* 429 U.S., at 495, 97 S.Ct. 711. When a person who is not serving a prison term is questioned, isolation may contribute to a coercive atmosphere by preventing family members, friends, and others who may be sympathetic from providing either advice or emotional support. And without any such assistance, the person who is questioned may feel overwhelming pressure to speak and to refrain from asking that the interview be terminated.
>
> By contrast, questioning a prisoner in private does not generally remove the prisoner from a supportive atmosphere. Fellow inmates are by no means necessarily friends. . . . Isolation from the general prison population is often in the best interest of the interviewee and, in any event, does not suggest on its own the atmosphere of coercion that concerned the Court in *Miranda*.
>
> It is true that taking a prisoner aside for questioning may necessitate some additional limitations on his freedom of movement. A prisoner may, for example, be removed from an exercise yard and taken, under close guard, to the room where the interview is to be held. But such procedures are an ordinary and familiar attribute of life behind bars. Escorts and special security precautions may be standard procedures regardless of the purpose for which an inmate is removed from his regular routine and taken to a special location. For example, ordinary prison procedure may require such measures when a prisoner is led to a meeting with an attorney.

132 S.Ct. at 1192. It also bears noting that Lieutenant Jett's questioning of defendant in this matter was not at all in furtherance of a criminal investigation but rather it was an administrative function

that allowed the Lieutenant to avoid placing all members of defendant's bloc in SHU pending further investigation into the possession of contraband.

In short, we recommend the court conclude that at no point during the "investigation" by FCI-O officials was defendant "in custody" entitling him to receive his *Miranda* rights and, accordingly, his motion should be **DENIED**.

### III.
#### CONCLUSION

For the reasons given we **RECOMMEND** the Motion to Suppress [doc. 33] be **DENIED**. Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429-30 (5th Cir. 1996) *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1)), *as recognized in Cruz v. Rodriguez*, 828 F. App'x 224, (5th Cir. 2020) (unpubl.)

THUS DONE AND SIGNED in Chambers this 10th day of February, 2021.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE